Kathleen **RAMOS**, a minor, by her mother Marcella Mason, as next friend, Marcella Mason, individually, and on behalf of three other minor children residing with her, and Della Morales, individually, Plaintiffs,

v.

John C. **MONTGOMERY**, individually, and as Director of the Department of Social Welfare of the State of California, and H. E. Detrich, individually, and as Director of the Department of Social Welfare for the County of San Diego, California, Defendants.

No. 69-259-K.

United States District Court, S. D. California.

June 4, 1970.

**1180**

David H. Getches, Robert S. Pelcyger, California Indian Legal Services, Escondido, Cal., for plaintiffs.

Thomas C. Lynch, Atty. Gen., William L. Zessar, Deputy Atty. Gen., and Bertram McLees, Jr., County Counsel, by Lloyd M. Harmon, Jr., Deputy Co. Counsel, San Diego County, San Diego, Cal., for defendants.

Before CARTER, Circuit Judge, and POWELL and SCHWARTZ, District Judges.

OPINION

POWELL, District Judge.

This action seeks to compel an adjustment upward of welfare payments. Plaintiffs move for an injunction to compel the California Department of Welfare to make payments to natural parents in the same amount as is paid for the care of children in foster homes.[1] Defendants have moved to dismiss the complaint. Since there is no genuine issue of fact involved we consider both motions together.

Plaintiff, Kathleen Ramos, is a minor child presently residing with her mother, Marcella Mason. Under California's Aid to Families with Dependent Children (AFDC) Marcella Mason receives monthly payments for the care of three of her children, Kathleen Ramos, Lester Mason and Theresa Mason. Plaintiff Della Morales is the maternal grandmother of Kathleen Ramos and until recently provided a home for Kathleen while she was a ward of the Juvenile Court.

Under Code § 11450 if Kathleen Ramos were placed in a foster home that home would be eligible to receive $105 per month for her care. As a natural parent Marcella Mason receives $48 per month for Kathleen's care. If all three of Mrs. Mason's children lived in a foster home it would be eligible to receive $308 a month. Mrs. Mason presently receives $144 a month for the care of her three minor children. Plaintiffs claim that this disparity in payments is contrary to federal law and void under the Supremacy Clause of the Constitution. Plaintiffs further maintain that it constitutes arbitrary, unreasonable and invidious discrimination in violation of the Fourteenth Amendment.

The defendants are respectively directors of the Department of Social Welfare of the State of California and of the County of San Diego. They have moved to dismiss this action on the ground that plaintiffs have failed to state a claim upon which relief can be granted.

Plaintiffs allege they will suffer irreparable injury if they do not receive compensation for benefits that have been wrongly denied to them. Plaintiff Mason's affidavit says: "If I could have the money which the county would pay to strangers to take care of my kids, I know I could do a much better job." She asks us to order the State of California to pay to her the same rate of AFDC assistance per child that foster parents now receive.

■ A State participating in the AFDC program must disperse its funds

---

1. Payments are made under California Welfare and Institutions Code § 11450 and the rules, regulations, policies and schedules promulgated thereunder.

in a fair and reasonable manner and in accordance with the applicable federal statutes, but it cannot be ordered to give forth more funds than are available.

"Thus the starting point of the statutory analysis must be a recognition that the federal law gives each State great latitude in dispensing its *available funds*." (Emphasis added.) Dandridge v. Williams, 397 U.S. 471, 478, 90 S.Ct. 1153, 1158, 25 L.Ed.2d 491 (April 6, 1970).

If we were inclined to declare the disparity of payments as constitutionally impermissible and order that all available funds be distributed equally to natural parents and foster parents alike, plaintiffs would receive no more than a nominal increase in aid. (See fn. 3.) This would not prevent the irreparable injury complained of here and would create problems within the California Welfare System of a critical nature.

## I.

Does the payment of a different rate of AFDC for children in foster homes and those in their own homes contravene the purposes of the Social Security Act and therefore violate the Supremacy Clause?

The number of recent Supreme Court decisions testing state welfare plans against the Social Security Act make it abundantly clear that " * * * participating States must comply with the terms of the federal legislation, * *." Rosado v. Wyman, 397 U.S. 397, 408, 90 S.Ct. 1207, 1215–1216, 25 L.Ed.2d 442 (April 6, 1970); Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (April 20, 1970); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (April 6, 1970); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); cf. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (March 23, 1970); Wheeler v. Montgomery, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed. 2d 307 (March 23, 1970).

Plaintiffs do not argue that granting aid to children in foster homes is con-

trary to the federal purpose behind the Social Security Act. They maintain that the higher aid payments to foster families frustrates the express congressional purpose of " * * * encouraging the care of dependent children in their own homes or in the homes of relatives, * * *." 42 U.S.C.A. § 601. They reason that a system of aid grants which allows more money for foster care than for care of a child living with its natural parents tends to induce the placement of children in foster homes and to break up families.

■ Plaintiffs are correct in stating that maintenance of the family structure is a paramount purpose behind the federal program of granting aid for the care of children. The family structure has been and remains the cornerstone of our society. More important even is the overall interest of the public in the protection of the child. See: King v. Smith, 392 U.S. 309, 325, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

It is evident that some children must live in foster homes. Congress recognized the need to aid foster parents in the care of children through the AFDC program. See e. g., 42 U.S.C.A. § 602 et seq.

"Thus, under the 1961 and 1962 amendments to the Social Security Act, the States are permitted to remove a child from a home that is judicially determined to be so unsuitable as to 'be contrary to the welfare of such child.' 42 U.S.C. § 608(a) (1). The States are also permitted to terminate AFDC assistance to a child living in an unsuitable home, if they provide other adequate care and assistance for the child under a general welfare program. 42 U.S.C. Section 604(b)." King v. Smith, supra at p. 324, 88 S.Ct. at p. 2137.

In 1935 Congress recognized that it costs more money to maintain a foster child than a child residing at home.

"Through cash grants adjusted to the needs of the family it is possible to keep young children with their mother

in their own home * * *. This is recognized by everyone to be the *least expensive.* and altogether most desirable method for meeting the needs of these families that has yet been devised." (Emphasis added.) (S.Rep. No. 628, 74th Cong. (1935)).

Recently Congress broadened the scope of the AFDC foster care provisions contained in 42 U.S.C.A. § 603(a) (1) (B) [2] effective July 1, 1969.

"Under the committee bill, Federal funds will be available *on a more liberal basis* than for the basic program *out of a recognition that foster family care is more costly than care in the child's home.* * * *. Federal sharing will be possible in payments up to $100 a month (on an average basis) for children in foster care." (Emphasis added.) 2 U.S.Code Cong. & Ad. News, p. 3001 (1967).

Thus Congress has found that the foster home program furnishes the best available substitute for the actual family structure by granting AFDC relief in furtherance of its underlying purpose of

aiding less fortunate children. In answer to plaintiffs' first claim, it is also clear that Congress recognizes that it costs more to support a child in a foster home than in his own home. As a consequence, Congress has allocated additional funds to compensate for the added cost. (See fn. 2).

 It is our judgment that California Welfare and Institution Code § 11450 is not contrary to Federal law and void under the Supremacy Clause of the Constitution. In reaching this conclusion we note that the disparity in aid complained of here has not resulted in any increase in the number of children receiving aid for foster care as compared to the overall number of children receiving AFDC benefits.[3] Any assumption that this will happen in the future is based on speculation. Further, Congress has required that once a child is taken from his family and placed in a foster home receiving AFDC that all reasonable steps be taken in assuring that he does not remain there once his family situation becomes acceptable for his return.[4]

---

2. 42 U.S.C.A. § 603(a) (1) (B)
"the Federal percentage of the amount by which such expenditures exceed the maximum which may be counted under clause (A), not counting so much of an expenditure with respect to any month as exceeds (i) the product of $32 multiplied by the total number of recipients

of aid to families with dependent children (other than such aid in the form of foster care) for such month, plus (ii) the product of $100 multiplied by the total number of recipients of aid to families with dependent children in the form of foster care for such month; and * * *."

3. The uncontroverted affidavits of defendants show the following:

Children receiving AFDC benefits

| Year | Children at home | Foster Children |
|---|---|---|
| 1967–68 | 572,250 | 24,304 |
| 1968–69 | 657,644 | 25,848 |

If during fiscal 1968–69 the foster care at $105 per month per child and the $48 paid to natural parents per month per child under AFDC were averaged and all received the same amount it would be $50.16 per child or a reduction per child in foster homes of $54.84. The increase for children in their family homes would be only $2.16 per month.

---

4. The State plan must:
"(f) include[s] provision for (1) development of a plan for each such child (including periodic review of the necessity for the child's being in a foster family home or child-care institution) to assure that he receives proper care and that services are provided which are designed to improve the conditions in the home from which he was removed

## II.

Does the disparity in AFDC payments constitute arbitrary, unreasonable and invidious discrimination in violation of the Fourteenth Amendment?

In Dandridge v. Williams, *supra*, 397 U.S. at p. 485, 90 S.Ct. at p. 1161, the court said:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393."

In this case there exists a "reasonable basis" for paying more money per child for foster home care. A foster home is more than a normal neighborhood residence. It is an institution that is licensed to operate and is fully regulated by the State. Indeed a State could not obtain federal funds for foster home care if this were not so. 42 U.S.C.A. § 608. Compliance with regulations requires expenditures of time and expense.

Foster parents perform many intangible services for their foster children. Natural parents have a moral, if not a legal obligation to perform those services. The labors of cooking, washing, ironing clothes, cleaning house, etc., not to mention the time and patience needed to aid in the development of the child's character are all necessary aspects of his support. To provide these services foster parents must give up much of their privacy in daily affairs.

Some children must of necessity be placed in foster homes due to the financial inability of the parents to provide a suitable home. If such parents were to receive the same aid per child as foster parents receive there is no doubt that they could do a better job in supporting their children. Nevertheless, to give them that additional aid from appropriated funds would result in an overall reduction in money available for foster home care. A reduction in foster home care aid would threaten the continued existence of the entire program and jeopardize the welfare of thousands of children. (See fn. 3).

We conclude that the disparity in AFDC payments as provided under Code § 11450 does not constitute arbitrary, unreasonable and invidious discrimination in violation of the Fourteenth Amendment. The State of California has a reasonable basis to support its action in establishing the two rates of payment under AFDC.

The motion for injunction will be denied. Defendants' motion to dismiss will be granted. Defendants' counsel may prepare and submit the appropriate order.

or to otherwise make possible his being placed in the home of a relative specified in section 606(a) of this title, * * *." 42 U.S.C.A. § 608(f).