Marcel **YOUAKIM** et al., Plaintiffs,

v.

Jerome **MILLER** Individually and as Director of the Department of Children and Family Services and the Department of Children and Family Services, of the State of Illinois, Defendants.

No. 73 C 635.

United States District Court,
N. D. Illinois, E. D.

Feb. 28, 1974.

Patrick A. Keenan, Chicago, Ill., for plaintiffs; of counsel Bogdan Martinovich, Senior Law Student, De Paul Law Clinic.

William J. Scott, Atty. Gen., State of Ill., Richard L. Ryan, Asst. Atty. Gen., Chicago, Ill., for defendants.

Before STEVENS, Circuit Judge, and MAROVITZ and TONE, District Judges.

## MEMORANDUM OF DECISION

TONE, District Judge.

This suit was commenced as a class action to enjoin the operation of the Illi-nois foster home program. Under that program foster parents who provide homes for children unrelated to them receive monthly foster care payments from the Department of Children and Family Services, but foster parents who provide homes for children related to them do not receive such payments. Because plaintiffs seek to enjoin the operation of a state statute, a three-judge court was convened pursuant to 28 U.S.C. §§ 2281, 2284. Defendants have now moved to strike and dismiss.

The Illinois statutory scheme allocates federally subsidized payments to foster parents who care for children who are wards of the state. Section 5 of the Department of Children and Family Services Act, Ill.Rev.Stat., 1971, Ch. 23, § 5005, empowers the Department ("CFS") and its Director to

(a) establish rules and regulations concerning foster care;

(b) accept for care and placement in foster homes children adjudicated wards of the state; and

(c) make payments for the board, clothing, care, training and supervision of children placed in licensed foster homes.

Under the Department's eligibility criteria, eligibility for monthly payments, which now approximate $105 per child, depends upon the economic status of the home from which the child was removed, not on the wealth of the foster parents. By authorizing payments only to licensed homes, Section 5 denies eligibility to foster parents providing homes for children related to them, because those foster parents are exempt from licensing under the Child Care Act of 1969, Ill. Rev.Stat., 1971, Ch. 23, §§ 2212.05, 2212.17, and thus cannot be licensed.[1]

---

1. The parties have directed their arguments primarily to the Illinois Department of Children and Family Services Manual at 95–97 as the authority for denying payments to re-lated foster parents. This manual, however, merely states that "[t]he Department has no statutory authority to pay relatives for the care of children," and thus does no more

Foster parents caring for related children are eligible for Aid to Families with Dependent Children ("AFDC") payments under Ill.Rev.Stat., 1971, Ch. 23, §§ 4–1 to 4–11, but in order to receive these payments they must make a separate application to the Department of Public Aid, and more importantly, these monthly payments are only about $63.00 per child. In addition to the AFDC payments, some foster families in which the parents and children are related receive additional funds from the Social Service Administration up to the amount of the foster care payments, if the Department of Children and Family Services makes a determination of need. This exception to the general practice is explained only in the CFS placement manual, but according to an affidavit filed by an administrator of CFS, approximately 140 of the 1500 related foster families in the state now receive this extra allowance.

Plaintiffs are Marcel and Linda Youakim, husband and wife; Timothy and Mary Lou Robertson, the minor brother and sister of Linda Youakim who have been living with their foster parents the Youakims since 1972; and Larry and Sherry Robertson, the minor brother and sister of Linda Youakim who have been living in foster care facilities operated by persons unrelated to them since 1969. The Youakims allege that because they do not receive the full foster care payments, they suffer severe financial hardship in caring for Timothy and Mary Lou, and are financially unable to take in Larry and Sherry. On behalf of themselves and all other persons similarly situated, plaintiffs assert that the distinction between related and unrelated foster parents for the purpose of determining eligibility for foster care benefits denies them equal protection of the laws as guaranteed by the Fourteenth Amendment, and they ask that defendants, the Illinois Department of Family Services and its director, be en-

joined from enforcing, applying or executing this program.

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, defendants have moved to strike and dismiss the complaint, asserting, in addition to an abstention ground which we do not reach, that

(1) the Court does not have jurisdiction over the subject matter;

(2) the action should not be maintained as a class action; and

(3) plaintiffs have failed to state a claim upon which relief may be granted.

Both sides having filed affidavits asserting facts outside the pleadings, we treat the motion as one for summary judgment, as we are authorized to do by the last sentence of Rule 12(b).

At the oral argument plaintiffs urged that an evidentiary hearing should be held. In the view we take of the case, if the evidence most favorable to plaintiffs' contentions is assumed, judgment must be entered for defendants. An evidentiary hearing is, therefore, unnecessary.

*Jurisdiction.*

■ Defendants argue that this Court lacks jurisdiction because the action is in effect against the State of Illinois and therefore is barred by the sovereign immunity provision of the Eleventh Amendment. This argument is without merit. Beginning with Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), it has been held that a suit to restrain unconstitutional action threatened by an individual who is a state officer is not a suit against the state and thus is not prohibited by the Eleventh Amendment. This rationale has been consistently followed in numerous civil rights cases and other actions where the application or execution of state statutes has been enjoined, *cf.* Townsend v. Swank, 404 U.S. 282, 92 S. Ct. 502, 30 L.Ed.2d 448 (1972); Shapiro

---

than summarize what is apparent on the face of the statutes. For the purposes of this opinion, then, Ill.Rev.Stat., 1971, Ch. 23,

§§ 2212.05, 2212.17, and 5005 will be considered as the challenged statutes.

v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and has been applied to permit suits against state officials to test the constitutionality of statutes under which they are acting, Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822 (1922); Hammer v. Dagenhart, 247 U.S. 251, 38 S.Ct. 529, 62 L.Ed. 1101 (1918). Indeed, under this rationale courts have assumed jurisdiction over many recent suits against state officials brought for the purpose of attacking social welfare schemes similar to the one here in question. *Cf., e. g.,* Gaither v. Sterrett, 346 F.Supp. 1095 (N.D.Ind. 1972); Jefferies v. Sugarman, 345 F.Supp. 172 (S.D.N.Y.1972); Dimery v. Department of Social Services, 344 F.Supp. 1181 (S.D.Iowa 1972); Alexander v. Swank, 314 F.Supp. 1082 (N.D.Ill. 1970). The Court has jurisdiction to decide this case.

*Class Action Issue.*

■■ Another preliminary question is the propriety of maintaining this action as a class action. If the requirements of Rule 23, F.R.Civ.P., are met, a court normally must approve a class action. Fujishima v. Board of Education, 460 F.2d 1355, 1360 (7th Cir. 1972); but see Ihrke v. Northern States Power Co., 459 F.2d 566, 572 (8th Cir. 1972). Defendants argue that the claims of the named plaintiffs are not typical because not all foster parents will be financially unable to care for children related to them if they do not receive payments from the state. This argument ignores the basis of plaintiffs' claims. Plaintiffs are not challenging a system where payments are made to some and denied to others on the basis of need, but a scheme whereby, irrespective of the individualized needs of the foster parents, payments are made to families where the foster parents and children are unrelated, but, as a general rule, not to related foster families. The exception to the general policy allows payments to related foster families in certain cases, but even in light of this, related foster parents as a class are treated differently than unrelated foster parents, because in order to qualify under this exception they must meet a certain level of need which the unrelated foster parents do not have to meet. Thus, the interests of the named plaintiffs are typical of the class and, the other requirements of Rule 23 also having been met, the class action will be approved.

*Other Preliminary Matters.*

■ Before proceeding to the merits, we must first dispose of several other matters. One of these is plaintiffs' motion to strike certain allegations of an affidavit in support of defendants' motion by Frank J. Kopecky, Chief Counsel for CFS. Plaintiffs first seek to strike reference to the exception to the scheme under attack whereby under certain circumstances related foster parents are given payments in an amount equal to those given to unrelated foster parents. This motion will be denied, for plaintiffs have not presented adequate grounds to strike these allegations, and plaintiffs themselves have filed affidavits which refer to the same exception. Next, plaintiffs seek to strike an allegation in the affidavit which refers to an administrative determination as the basis for the Department's policy of generally not paying related foster parents. This allegation will be stricken because of the affiant's failure to state specific facts from which we can determine his personal knowledge of this matter. Finally, plaintiffs seek to strike statements relating to the respective jurisdictions of the Department of Public Aid and the Department of Children and Family Services. Plaintiffs' motion in this respect will be denied, the affiant being capable of testifying as to these matters from his own personal knowledge.

*The Merits.*

■ We turn now to the equal protection question. A state statute dealing with social welfare need only be rationally based and free from invidious discrimination. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Since the statutes chal-

lenged here fall within the category governed by the *Dandridge* rule, their validity depends upon whether the distinction between related and unrelated foster parents is based on differences that are reasonably related to the legitimate purposes of the foster care program. Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1953).

█ Plaintiffs argue that, by providing for state aid only to foster parents who are unrelated to the child and denying it to others, the state has breached its duty to provide equally for all dependent children and has in fact contributed to the breakup of family homes. They assert that since related foster parents have the same need for state subsidies to provide adequately for their foster children as do unrelated foster parents, there is no basis for the distinction. Although this statement of the state's duty may indeed be correct, plaintiffs have failed to recognize both the purpose for which the payments are made and the test to be employed in examining the classification of the statute. When a classification in a law such as this is called into question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. Morey v. Doud, *supra*, 354 U.S. 457; Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911).

█ At the time this statute was enacted, the Illinois General Assembly could reasonably have been concerned about how to use available public funds to provide as many foster homes as possible. It could reasonably have set out to provide for allocation of the available funds in a manner designed to secure the maximum number of foster parents for children who would otherwise remain parentless. A reasonable method of achieving this goal would have been to provide for the distribution of funds only to persons who would otherwise

have had no particular reason or incentive for becoming foster parents rather than allocating the funds to all persons who become foster parents and thereby reducing the amount received by each; and it is on this basis that the defendants assert the classification was made. Allegedly, the state perceived a moral obligation on behalf of related foster parents to care for their related children which could not or would not be deepened by providing them a pro rata portion of the available funds. Therefore, according to the defendants, the state decided that the money which could have been allotted to related foster parents would be better used as added inducement to unrelated persons.

This classification, the wisdom of which is not for us to determine, bears a rational relationship to the legitimate purpose of attempting to assure that foster homes are made available. Some related foster parents may not be able to afford the responsibility of caring for additional children,[2] but the state argues that the scheme was not enacted to alleviate this problem, and from the fact that payments are not based on the relative wealth of the foster parents, this contention is borne out. In this respect, the case at bar differs from United States Department of Agriculture v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973), a case in which the Supreme Court held unconstitutional a statutory scheme which excluded from participation in the food stamp program any household containing an individual who is unrelated to any other member of the household. The critical point of that decision, and the basis upon which it is distinguishable from the case at bar, is that the purpose of the food stamp program was to alleviate hunger, and that to fulfill this purpose it had to be administered on the basis of need rather than on the basis of the relationships of the people constituting one economic unit and sharing cooking facilities.

---

**2.** Of course, this possibility is lessened by the fact that AFDC payments are generally available.

More analogous to the case at bar is Ramos v. Montgomery, 313 F.Supp. 1179 (S.D.Cal.1970), aff'd, 400 U.S. 1003, 91 S.Ct. 572, 27 L.Ed.2d 618 (1971), a case involving a challenge to a California scheme under which AFDC payments made to natural parents were substantially less than payments made to foster parents. The Court in that case recognized that maintenance of the family structure was an important consideration in any child welfare program and that some natural parents were financially unable to provide suitable homes for their children, but nevertheless upheld the classification on the ground that the overriding purpose of the statute was the overall interest of the public in the protection of children[3] and that this purpose was reasonably served by a plan which was motivated to provide as many foster homes as possible.[4] The *Ramos* case is factually distinguishable from the case at bar, but the reasoning of the court is applicable here. A natural parent's responsibility to its child may stem from a legal duty, whereas a related foster parent's duty is moral, but in either case the result will generally be the same: the parent or relative is likely to care for the child. It is thus reasonable in either case for the state to adopt a program designed to induce families who would not otherwise become foster parents to assume that role.

The challenged classification will cause some children to be separated from their relatives for financial reasons. The state may reasonably have concluded, however, that the greater good of the greater number of children in need of foster homes is served by the classification which has been made. It may have concluded that if the classification were not made, the state's foster homes program would be jeopardized. As the class eligible to receive payments is made more inclusive, the individual payments become smaller. The possibility exists that if related persons are added to the eligible class, the individual payments would be reduced to an amount insufficient to induce qualified unrelated persons to provide foster homes for dependent children. Thus, the purpose of the payments would not be served, and either the fiscal integrity of the program would be impaired or the standards for approval of unrelated persons might have to be compromised.[5]

---

3. Among the stated purposes for which child welfare services are authorized under the Illinois Department of Children and Family Services Act are "protecting and caring for homeless dependent or neglected children"; "protecting and promoting the welfare of children, including the strengthening of their own families and counseling of family members"; and "providing adequate care of children away from their homes, where needed, in foster family homes." Ill.Rev.Stat., 1971, Ch. 23, § 5005. On the basis of this language, it can be inferred that, as in *Ramos*, although strengthening of the family unit is an important concern of the Act, the primary purpose of the Act is the protection and care of children generally.

4. Another basis for the decision in *Ramos* was that it was reasonable to expect that foster parents would incur expenses in meeting state licensing requirements which natural parents would not. Whether this rationale is also applicable to the case at bar is difficult to determine, for although relatives are not subject to licensing, they are kept under close scrutiny by CFS. In any event, it is not necessary for us to resolve this question.

5. A consideration of the consequences of eliminating the classification which plaintiffs challenge will identify another rational basis for it. The payments which are the subject of this litigation are intended to subsidize care for children who have been adjudicated wards of the state. It is manifest that there are many children in Illinois whose natural parents are deceased but who, without being adjudicated wards of the state, are cared for by relatives who are their legal custodians, guardians, or perhaps even adoptive parents. Certainly the state has an interest in encouraging its citizens to care for related minors who have been orphaned by the death of their parents, either by adopting them, accepting the responsibilities of guardianship, or even merely taking informal custody of such minor children without having them adjudicated wards of the state. If the plaintiffs' attack on the Illinois program were sustained, relatives would have a finan-

There is language in Townsend v. Swank, *supra*, 404 U.S. at 291, that serious equal protections problems may arise when a state attempts to rely on the concept of fiscal integrity to limit beyond federal statutory standards the class eligible to receive federally subsidized payments, but plaintiffs' argument that that dictum invalidates the Illinois program in question here is of no avail. The regulations interpreting the Federal Social Security Act gives the states "substantial latitude and corresponding responsibility for determining the coverage, nature, and scope of their public assistance programs," and limits this authority only to the extent that "the groups selected for inclusion in the plan . . . must not exclude individuals or groups on an arbitrary or unreasonable basis, and must not result in inequitable treatment of individuals or groups in the light of the provisions and purposes of the public assistance titles of the Social Security Act." 45 C.F.R. § 233.10. Far from being inconsistent with the federal scheme, the Illinois scheme in general seems to parallel it.[6] The federal statute authorizes aid to the natural parents and relatives of dependent children in one section, 42 U.S.C. § 606, and aid to foster parents in another, 42 U.S.C. § 608. Additionally, more money is allocated under the federal plan to foster care payments than to regular AFDC payments. 42 U.S.C. § 603(a)(1)(B); see Ramos v. Montgomery, *supra*, 313 F.Supp. at 1182. Thus the federal statute makes the same classification as the Illinois statute.

The Illinois scheme does not deny plaintiffs equal protection of the laws. Summary judgment is entered in favor of defendants.

cial inducement to cause orphaned children to be adjudicated wards of the state in order to qualify themselves for foster care payments. The state may rationally conclude that such a financial motivation would contravene the policy of the laws relating to adoption and guardianship.

6. Plaintiffs argue that the "exception to policy" under which some related foster parents receive additional allotments on the basis of need makes the state scheme unlike the federal. This is a variation, which the federal regulations explicitly allow, 45 C.F.R. § 233.10, but the two schemes are nevertheless parallel.