Alfred D. Lerner, J.
In this action for a declaratory judgment both parties move for summary judgment. The complaint seeks a declaration that subdivision 14 of section 371 of the Social Services Law is unconstitutional as violative of the Equal
*380 Protection and Due Process Clauses of the United States Constitution. Plaintiffs also assert that the 'aforesaid section violates the spirit and intent of the Federal Social Security Act. Defendants seek summary judgment dismissing the complaint as a result of plaintiff’s ineligibility to obtain benefits pursuant to subdivision 14 of section 371 of the Social Services Law. Plaintiff cross-moves for .summary relief adjudging subdivision 14 of section 371 to be unconstitutional.
The plaintiff Helen Taylor brings this action individually, on behalf of her seven grandchildren and on behalf of all others similarly situated, pursuant to CPLB 1005.
Plaintiff is a widow, whose son was killed in action in Vietnam. She is partially disabled, having lost the sight of one eye. Her only income is a social security pension. The seven grandchildren were born to her daughter, Cynthia, who has since abandoned them and left for parts unknown.
During the period from April, 1970 through May, 1973, six of the seven children were found in various Family Court proceedings to be “ neglected ” children within the ^meaning of the Family Court Act. All of the children were eventually removed from the mother and placed with plaintiff by the Family Court 'and/or the New York City Department of Social Services, which administers the public assistance program within the five counties of New York City.
The Social Security Act ( U. S. Code, tit. 42, § 601) provides for Federal aid to States which furnish care in the form of financial assistance and services to needy families with children.
Two plans exist under which the plaintiff and persons similarly situated receive aid from the State. The State receives Federal assistance under both formulae.
The first program, and the one under which the plaintiff is receiving the sum of $588 from the Department of Social Services, is known as “ Aid to Dependent Children ” (ADC). (See Social Services Law, § 343.) Those eligible to receive ADC payments and the criteria therefor are set forth in section 606 of title 42 of the United States Code. A grandparent is so denominatéd at paragraph 1 of subdivision a of section 606 of title 42 of the United States Code.
The second program providing assistance is known as “ ADC-Foster Care ”. (U. S. Code, tit. 42, §§ 602, 606, subd. [a]; §§ 607, 608.) Under this program the plaintiff would receive a total sum of $1,155 per month, or a difference of $567 per month. (18 NYCBR 352.2; 18 NYCBB 352.3; Social Services Law, § 392.)
*381 The plaintiff has made application for assistance under the above described “ ADC-Foster Care ” program, and the same has been denied by defendants pursuant to the authority of subdivision 14 of section 371 of the Social Services Law, which defines a boarding home as one “ other than that of the child’s parent, step-parent, grandparent or legal guardian
The factual pattern set forth herein is accepted by all parties. The plaintiff contends that, as a matter of law, the arbitrary exclusion of grandparents as a class from those who may receive aid at the “ foster care ” rate is unconstitutional and violative of the spirit and intent of the Federal statutes which establish criteria in this area {supra). The Attorney-General, on behalf of the New York State Department of Social Services, takes the position that the statute (Social Services Law, § 371, subd. 14) simply “ takes advantage of the natural affection between * * * grandparents and the children ” and, as such, is not arbitrary, callous, or improper. The defendant, New York City Department of Social Services, has identified itself with the State’s position. The defendants seek summary judgment dismissing the complaint and, as stated above, the plaintiff cross-moves for summary judgment declaring subdivision 14 of section 371 of the Social Services Law to be unconstitutional.
Section 415 of the Family Court Act defines those who bear legal responsibility for the support of needy children. The only ones upon whom such obligation is imposed are the parents or stepparents of the child. The grandparent, therefore, has no legal responsibility at all and stands in the same position as an aunt, uncle, or stranger, for that matter. The statute at issue herein (Social Services Law, § 371, subd. 14) has picked out from among the limbs of the needy child’s family tree only that branch which is labeled “ grandparent ”. All other nonresponsible relatives would qualify for “ foster care ” assistance. An aunt who takes the children in, an uncle, a great-grandparent, even an older sibling, would qualify, but not this plaintiff or any grandparent and only because (without any other criteria or inquiry or examination) a grandparent is cut off, deleted, and excluded from ADC-Foster Care aid by the said subdivision 14 of section 371 of the Social Services Law.
There is no question that the exclusion contained in section 371 is arbitrary. The issue, however, is whether the State’s arbitrary action is one which may be justified by circumstances, is in the general welfare, is not violative of the Equal Protection and Due Process Clauses of the Constitution, and does not violate the letter or the spirit and intent of the Federally- *382 involved statutes under which the State receives reimbursement.
In order to become eligible for financial assistance, the various States are required to adhere to certain basic criteria in formulating their individual schemes of assistance. Such criteria are contained in title 45 of the Code of Federal Regulations (eh. 11, Part 233, § 233.20):
“ (a) Requirements for State Plans. A State Plan for OAA, AFDC, AB, APTD or AABD must, as specified below:
“ (1) General. Provide that the determination of need and amount of assistance for all applicants and recipients will be made on an objective and equitable basis and all types of income will be taken into consideration in the same way, except where otherwise specifically authorized by Federal statute.
“ (2) Standards of assistance. (i) Specify a statewide standard, expressed in money amounts, to be used in determining (a) the need of applicants and recipients and (b) the amount of the assistance payment.
“ (ii) In the AFDC plan, provide that by July 1, 1969, the State’s standard of assistance for the AFDC program will have been adjusted to reflect fully changes in living costs since such standards were established, and any máximums that the State imposes on the amount of aid paid to families will have been proportionately adjusted. In such adjustment a consolidation of the standard (i.e, combining of items) may not result in a reduction in the content of the standard. In the event the State is not able to meet need in full under the adjusted standard, the State may make ratable reductions in accordance with sub-paragraph (3) (viii) of this paragraph. Nevertheless, if a State maintains a system of dollar máximums, these máximums must be proportionately adjusted in relation to the updated standards.
“ (iii) Provide that the standard will be uniformly applied throughout the State.
“ (iv) Include the method used in determining needs, which must be one of the three methods described in ‘ Guides and Recommendations ’ or a comparable method which meets the conditions specified in such guides and is approved by the Assistance Payments Administration.
11 (v) If the State agency includes special need items in its standard, (a) describe those that will be recognized, and the circumstances under which they will be included, and (b) provide that they will be considered in the need determination for all applicants and recipients requiring them.
*383 “ (vi) If the State chooses to estabish the need of the individual on a basis that recognizes, as essential to his well-being, the presence in the home of other needy individuals, (a) specify the persons whose needs will be included in the individual’s need, and (b) provide that the decision as to whether any individual will be recognized as essential to the recipient’s well-being shall rest with the recipient. ”
The intent of the law is spelled out in section'601 of title 42 of the United States Code: “ Appropriations. For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection, there is authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans for aid and services to needy families with children.”
A careful reading of subdivision 14 of section 371 in light of the above criteria has led this court to the inescapable conclusion that the section violates not only the clear mandate of Congress as set forth in the Code of Federal Regulations (tit. 45, § 233.20) but also clearly violates the broad spirit of liberality intended by the Federal Government in the disposition of funds to needy children. (U. S. Code, tit. 42, § 601.)
To uphold this statute would require the court to ignore conclusions which would necessarily and logically flow from its decision and would clearly be antithetical to the Federal law’s intent, i.e., the granting of summary judgment to the defendants could result in only three possibilities:
(a) the plaintiff would be forced to give up all of the children;
(b) the plaintiff would be able to keep some but would be compelled to surrender some others; or
(c) the plaintiff could keep all of the children and continue to barely survive on the smaller amount provided under ADC.
It would be overstating the obvious to point out that each of these “ solutions ” would be disastrous to the physical and mental well-being of the children.
*384 Since the State and city both concede that foster care is more expensive than nonfoster care, the ultimate initial expense to the defendants would be the same if the plaintiff were given ADC-Foster Care aid or if someone else were given such aid because the grandmother could not qualify under subdivision 14 of section 371. Since institutional care is even higher, it would cost the defendants (State and city) even more if the children were separated and some placed in institutions. This would be a quite likely result, inasmuch as reason tells us that there are very few, if any, foster homes willing and capable of accommodating all seven of these children at once. It is well to note that two of them have already disclosed psychiatric symptoms which need attention.
Furthermore, this court is not blind to the realities of our time and is convinced that a statute which serves to wrench children from a loving, caring environment and thrust them into a pecuniary relationship with strangers or in an institution is, and should be, against the public policy of this State.
The absurdity of the situation is further demonstrated by considering the fact that if a foster parent was found who would accept all seven of the children, she would qualify for ADC-Foster Care, but this plaintiff does not so qualify simply by reason of accident of birth and an arbitrary, unreasonable, guideline.
None of the results flowing from the inequity of subdivision 14 of section 371 can, in any way, be reconciled to the language expressing the legislative intent of appropriate Federal statutes. (U. S. Code, tit. 42, § 601.)
Section 601 clearly delineates the “ purpose of encouraging the care of dependent children in their own homes or in the homes of relatives ”. Any exclusion of a class from such assistance must “ be made on an objective and equitable basis ”. (Emphasis supplied.) (Code of Fed. Beg., tit. 45, § 233.20, § [a], subd. [1].) Subsection 14 of section 371 is neither objective nor is it equitable. It is, in fact, the antithesis of the mandate. It is discriminatory and arbitrary, creating pain and hardship among the poorest and most helpless of our people. In its implications and effect among those confined to our urban ghetto areas the statute takes its heaviest toll.
The court will proceed to the constitutional question raised by plaintiff. As stated above, the plaintiff and others similarly situated are the only non-legally responsible relatives who are excluded from ADC-Foster Care. The defense argues that this is justified for the same reason that mothers are so excluded. *385 This argument might have some merit, constitutionally, if all blood relatives were excluded. (Of course, the statute would still fall as being violative of the Federal guidelines discussed above.) However, no rationale at all exists here. Aunts are included, grandmothers excluded; uncles in, grandfathers out; siblings in, grandparents out. Upon what basis were these decisions made?
The main thrust (if not the only one) of defendants’ justification for the statutory exclusion is that grandparents, although not legally responsible, have a moral obligation arising out of love and affection. Certainly, the same argument could be made for many other non-legally responsible relatives who have similar love and affection for the children, i.e., aunts, uncles, brothers, sisters, etc. Love and affection make it no easier for needy people to survive themselves and give adequate care to their charges.
The Constitution requires more than mere legislative fiat for a person or persons to be deprived of certain rights. In other words, it simply is not enough for the State to arbitrarily apply its imprimatur to one group and deny it to another, thereby depriving the less fortunate group of rights to which it would otherwise be entitled.
In Ramos v. Montgomery (313 F. Supp. 1179, 1183, affd. 400 U. S. 1003) the United States District Court stated, in upholding a California statute denying foster care funds to a natural parent, that there ‘ ‘ exists a ‘ reasonable basis ’ for paying more money per child for foster home care * * * foster parents provide many intangible services for their foster children. Natural parents have a moral, if not a legal obligation to perform those services * * * to provide these services foster
parents must give up much of their privacy in daily affairs.” (Emphasis supplied.)
In New York State grandparents are specifically excluded by law from any legal obligation to support their grandchildren. (Family Ct. Act, § 415.) (Prior to July 2, 1965, grandparents were included as legally responsible persons under such section.)
In Glampett v. Michigan (Civ. 73-4018, S. D., 1973) the court declared that a South Dakota statute which denied the same level of aid to non-legally responsible relatives was unconstitutional and rejected the defendant’s argument that “ solely because of this familial tie, a kinship ® * * which incurs no legal obligation to support and care for those dependent children placed there ” justified the State’s discrimination.
*386 While that case involved a statute that denied the same level of assistance to legally responsible relatives to wit, parents, it also denied it to non-legally responsible relatives and the decision limited its application only to those relatives falling into the non-legally responsible group. To that extent the case is squarely in point with both the issues raised in the instant case and the results sought to be obtained here by the plaintiff.
Whereas subdivision 12 of section 371 defines “ Place Out ” to mean the arrangement for free care of “ a child in a family other than that of the child’s parent, step-parent, grandparent, brother, sister, uncle, or aunt or legal guardian, for the purpose of adoption or for the purpose of providing care ”, subdivision 14, the subject of this proceeding, precludes only grandparents from receiving foster care aid, while allowing all others except parents, stepparents and legal guardians to obtain such assistance.
The action of the State in relieving the plaintiff and others similarly situated of their previous legal obligation places such persons in the same category as all others who bear no legal responsibility.
In Shapiro v. Thompson (394 U. S. 618, 627) the Supreme Court, in ruling invalid certain ‘ ‘ one-year residency ’ ’ requirements, stated that the effect of such regulations was to create “ two classes of needy resident families indistinguishable from each other ”. Again, at page 634, the court ruled that “ any classification which serves to penalize the exercise of * * * [a] right, unless shown to be necessary to promote a compelling governmental interest is unconstitutional.” (Emphasis supplied.) (Skinner v. Oklahoma, 316 U. S. 535, 541; Korematsu United States, 323 U. S. 214, 216; Bates v. Little Rock, 361 U. S. 516, 524; Sherbert v. Verner, 374 U. S. 398, 406.)
In the instant case, clearly, the State has created two classes of persons in the category of those seeking to receive ADC-Foster Care aid, to wit; the first group consisting of those in the plaintiff’s class (ineligible under section 371) and second, those consisting of all other non-legally responsible persons who are eligible for such assistance. They are indistinguishable except that the first group may contain children who are malnourished, ill-clothed, unable to learn, stunted in growth and development because of an arbitrary regulation laid down by legislative fiat. It is an inescapable conclusion that the children of one group vis-a-vis the children of the other group are victimized, discriminated against, and demeaned by the arbitrary nature of this section (371, subd. 14).
*387 The “ compelling governmental interest ” declared necessary to maintain such classification by the Supreme Court in Shapiro v. Thompson (supra) has not been demonstrated in the case at bar. Clearly, the opposite is indicated. No moneys are saved, as stated above, since institutional care is many times as expensive as foster care and each alternative set forth hereinabove by the court would result in additional expense to the State. The deprivation visited upon these children becomes a further cause of failure, breakdown and criminality with all its concomitant effects upon society, not the least of which are spiralling increases in the costs of an already overburdened criminal justice system and further urban decay in our large metropolitan areas.
The plaintiff’s cross motion for summary judgment is granted on behalf of herself and on behalf of all those similarly situated pursuant to CPLB 1005. Subdivision 14 of section 371, as applied to the plaintiff and those others similarly situated, is declared unconstitutional as violative of the Equal Protection Clauses of section 11 of article I of the Constitution of the State of New York and of the Fourteenth Amendment to the United States Constitution, and is further declared violative of the letter, spirit and intent of the Social Security Act and the applicable Federal statutes relating to ADC-Foster Care.
The defendants are both permanently enjoined from denying to the plaintiff and others similarly situated ADC-Foster Care payments on the sole ground that they are grandparents of needy children for whom they are providing a home.