562 F.2d 483
 Marcel YOUAKIM and Linda Youakim, Individually and as foster
parents, Timothy Robertson, a minor, by his sister and next
friend Linda Youakim, Mary Lou Robertson, a minor, by her
sister and next friend Linda Youakim, Larry Robertson, a
minor, by his sister and next friend Linda Youakim, and
Sherry Robertson, a minor, by her sister and next friend
Linda Youakim, and all others similarly situated, Plaintiffs-Appellees,
v.
Jerome MILLER, Individually and as Director of The
Department of Children and Family Services and the
Department of Children and Family
Services of the State of Illinois,
Defendants-Appellants.
 No. 76-1884.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 13, 1977.
Decided Sept. 27, 1977.
 
 William J. Scott, Atty. Gen., Paul J. Bargiel, Paul V. Esposito, Asst. Attys. Gen., Chicago, Ill., for defendants-appellants.
 Patrick A. Keenan, Detroit, Mich., Robert E. Lehrer and James D. Weill, Legal Assistance Foundation of Chicago and Kenneth Kandaras, Chicago, Ill., for plaintiffs-appellees.
 Before CUMMINGS and PELL, Circuit Judges, and CAMPBELL, Senior District Judge.*
 PELL, Circuit Judge.
 
 
 1
 Appellants Jerome Miller and the Department of Children and Family Services (hereinafter referred to collectively as the DCFS) seek reversal of orders of the district court entered on July 27, 1976, and August 24, 1976, determining that related persons caring for children who have been declared wards of the state are eligible for AFDC-FC assistance under § 408 of the Social Security Act, 42 U.S.C. § 608.[1] The essential and dispositive question concerns the meaning, for federal welfare purposes, of the term "foster family home."
 
 
 2
 The basic facts regarding the DCFS denial of foster care payments to the Youakims have been recounted in the three-judge district court opinion in Youakim v. Miller, 374 F.Supp. 1204 (N.D.Ill.1974), vacated, 425 U.S. 231, 96 S.Ct. 1399, 47 L.Ed.2d 701 (1976) (per curiam). Initially, the named plaintiffs filed a civil rights class action against the DCFS charging that the Illinois statutory foster care scheme denied them equal protection under the Fourteenth Amendment. After this claim was rejected by the three-judge court, see 374 F.Supp. at 1207-10, the plaintiffs pressed in argument before the Supreme Court the claim that the Illinois state law was in conflict with the Social Security Act. The Supreme Court determined that it was appropriate that the plaintiffs be permitted to press the issue of conflict between state and federal law in the district court, vacated the judgment, and remanded for proceedings consistent with its opinion. 425 U.S. at 236-37, 96 S.Ct. 1399.
 
 
 3
 On remand, the district court reviewed both the history of the case and the contentions of the parties. The opinion of the district court is, with certain exceptions,[2] adopted as the opinion of this court and, the order not having been published, a copy thereof is attached to this opinion as an Appendix. Our independent comments are directed to arguments of the parties which are not set forth or analyzed in the court's memorandum opinion of July 27, 1976 or which arise by virtue of the formulation of the judgment order of August 24, 1976.
 
 
 4
 * The district court agreed, as do we, with the Youakims' argument that the plain meaning of the federal statute is that all state wards placed in approved foster homes are eligible for full AFDC-FC payments under 42 U.S.C. § 608. The district court further concluded the HEW's Program Instruction APA-PI-75-9, issued on October 25, 1974, was consistent with the plain words and meaning of Section 408 of the Act, 42 U.S.C. § 608. We agree. Finally, the district court concluded after study of the legislative history that Congress did not intend to exclude related foster homes from AFDC-FC benefits authorized in Section 408 of the Act but rather intended such benefits to be paid to eligible children in all approved foster homes. We agree that eligible children in approved foster homes are entitled to benefits, but we rest our conclusion on the meaning of the statute itself rather than upon a determination of an implied legislative intent.
 
 
 5
 The DCFS has consistently maintained that Congress did not intend to benefit children who are related to their caretakers as foster children living with foster parents under the AFDC foster care provisions contained in 42 U.S.C. § 608. The essential basis of the DCFS refusal to pay the foster care benefit rate to the Youakims has been its view, succinctly stated before this court, that "a foster family home has to mean a nonrelated home." One of the strongest arguments in support of the DCFS position is found in a dictionary definition of the adjective "foster." In Webster's Third New International Dictionary the general definition is "affording, receiving, or sharing nourishment, upbringing, or parental care though not related by blood or legal ties."[3] The DCFS position is weakened, however, by the examples following the general definition:
 
 
 6
 a: rearing the child of another
 
 
 7
 b: brought up by someone other than one's natural parent
 
 
 8
 c: reared in the same family but not of the same parentage.
 
 
 9
 Clearly the plaintiffs here are rearing the child of another (a supra ) and the children involved are being brought up by someone other than their natural parents (b supra ). In any event, as the DCFS concedes "Congress did not mean to incorporate Webster by reference."
 
 
 10
 Although the DCFS steadfastly adheres to its contention that the term "related foster parent" is a misnomer for federal welfare purposes, it has admitted that the language of the Social Security Act does not itself exclude relatives from the status of foster parentage.[4] The DCFS has constructed an elaborate, indeed ingenious argument, regarding an implied legislative intent to exclude relatives from the denotation of the word "foster." However, the DCFS has not directed equal attention to the possibility that our standard of judgment should be the meaning of the statute itself. See 2A Sutherland Statutory Construction § 45.07, at 20 (1973 ed.)
 
 
 11
 Our judicial function is limited to applying statutes on the basis of what Congress has written, not what Congress might have written. See Territory of Guam v. Olsen, 431 U.S. 195, 205, 97 S.Ct. 1774, 52 L.Ed.2d 250 (1977) (Marshall, J., dissenting). Examination of the various subsections of the Social Security Act discloses that Congress never really attempted to formulate comprehensive definitions of all the terms it employed in the statute. Thus, 42 U.S.C. § 606(b)(2)(D) refers to "aid in the form of foster home care" but does not itself explicate the meaning of the phrase. Similarly, 42 U.S.C. § 608(b) refers to "foster care in behalf of a child" but again does not itself explicate the meaning of that phrase.
 
 
 12
 However, Congress did use the expression "foster family home of any individual," 42 U.S.C. § 608(b)(1). The Youakims read the last three words of the statutory expression as supporting their view, while the DCFS argues that the entire expression must be read in order to discern its real meaning. Forthrightly, the DCFS states that "(t)he question then becomes, what does it mean when Congress has said 'foster family home'?" We agree that this is the appropriate question, but we think that Congress has itself provided the answer by defining that term.
 
 
 13
 Although Congress has not defined "foster home care," see 42 U.S.C. § 606(b) (2)(D), or "foster care," see 42 U.S.C. § 608(b), it has in fact set forth a statutory definition of the expression "foster family home":
 
 
 14
 For purposes of this section, the term "foster family home" means a foster family home for children which is licensed by the State in which it is situated or has been approved, by the agency of such State responsible for licensing homes of this type, as meeting the standards established for such licensing . . ..
 
 
 15
 The DCFS submits that this definition is "certainly circular." We need not determine whether or not this geometric criticism is valid, for the statutory phrasing does not appear to be framed with unremitting attention to the demands of lexical science. Our disposition of the appeal should not rest upon the lexicographical expertise of the draftsmen but upon the application of the statute to the facts of the case.
 
 
 16
 Thus, if the Youakims' home has been approved by the DCFS as meeting the standards established for the licensing of foster care homes, it falls within the statutory definition. The DCFS implicitly concedes that fact in its argument attacking the district court's supposedly erroneous findings.[5] The DCFS argues that the Youakims' home obviously could not have been approved as a foster care home. The logic of this argument is difficult to discern in view of the formulation of the Relative Home Placement Agreement.
 
 
 17
 The first sentence of that agreement states that:
 
 
 18
 The Division of Child Welfare, Department of Children and Family Services, has approved the home of Mr. and Mrs. Marcel Youakim, address 1720 Mannheim Road, Des Plaines, Ill. for the care of a foster child: Name Timothy Robertson Born 5/1/65.
 
 
 19
 The last sentence of the agreement states that:
 
 
 20
 This placement agreement, made in good faith and mutual confidence, is equally binding on the Department and the ABOVE NAMED RELATIVES.
 
 
 21
 The plain language of the agreement thus states that the Youakims' home has been approved for the care of a foster child. Under Fed.R.Civ.P. 52(a), findings of fact and conclusions of law are unnecessary on decisions of motions under Fed.R.Civ.P. 56. Because the placement agreement directly refers to the care of a foster child, we agree with the district court's determination that the Youakims' home has been approved as a foster care home. Whether it is a "foster family home" requires construction of the federal statute.
 
 
 22
 However, the DCFS argues that there is no showing anywhere in the record that the Youakims have actually met the standards required for the licensing of foster homes, so as to have incurred the identical obligations of all other foster parents in Illinois. In view of the DCFS assertion that this case should be decided on the basis of the clear and literal language which Congress used in enacting 42 U.S.C. §§ 606 and 608, we decline to find merit in the present argument.
 
 
 23
 We note that 42 U.S.C. § 608 does not require that an approved home actually meet the standards for licensed foster homes. Instead, the statutory language states that the home must be approved by the state agency as meeting the standards for licensing. The suggestion that the Youakims obviously could not be approved, see note 5 supra, is juxtaposed with the assertion that Illinois is a licensing state. However, the DCFS has already admitted in this case that the Youakims could not obtain a license.[6] Moreover, the DCFS Family Services Family Placement Manual states not only that "related" persons are not subject to foster home licensing but also that a relative home must reasonably meet minimum standards if it is to be considered as a placement resource.
 
 
 24
 We do not understand the DCFS to be contending that its staff workers ignored the criteria established in the Placement Manual. That the home of the Youakims was not "officially designated as a foster care facility," see note 5 supra, stems entirely from the want of power under Illinois law to make such an official designation. The very statutory provision struck down in the lower court's judgment order defines a "foster family home" as a facility for child care in the residences of families who receive children unrelated to them. Ill.Rev.Stat.1975, ch. 23, § 2212.17. The DCFS can hardly rely upon a definition of "foster family home" which directly conflicts with the federal statutory definition as a way of upsetting the district court's determination of a violation of the Supremacy Clause. Nor can the DCFS procedure of striking out the word "foster" wherever it appears in a Foster Home Placement Agreement be determinative of the Youakims' right to foster care benefits.[7]
 
 
 25
 The DCFS argues that the formulation of § 608(f), see note 1 supra, makes no sense whatsoever if related persons like the Youakims are held to be eligible for foster care payments. The DCFS contends that the only reasonable conclusion to be drawn from the Congressional insistence that the state plan should be designed to make possible the placement of the child in the home of a relative specified in § 606(a) is that Congress could not have intended to extend foster care coverage to a group of persons (viz., relatives caring for needy children) who were already covered by § 606 or to needy dependent children who are living with relatives. The DCFS interprets § 608(f) as meaning that, rather than regarding the Youakim home as a permanent stable environment for the Youakims' related children, it would paradoxically be required under the subsection to strive to remove the children from such temporary foster care and place them elsewhere.
 
 
 26
 We think that the DCFS reading of 42 U.S.C. § 608(f) is incorrect. That particular provision appears in a long, convoluted passage which begins with subsection (c) and continues up to the defining passage. See note 1 supra. Only three readings of the subsection are plausible.
 
 
 27
 First, the passage may refer back to subsection (c). In that case, it sets forth a condition which must be met before individuals receiving foster care expenditures are to be counted under § 603(a)(1)(A).[8] That referenced subsection specifies in part the amount which the Secretary of the Treasury shall pay in the case of a State by authorizing five-sixths of certain expenditures, not counting for purposes of that subsection a certain number of individuals. Second, the provision may refer back to subsection (d). In that case, the provision has significance for purposes of the reimbursement of administrative expenditures as provided in § 603(a)(3).[9] Either reading of subsection (f) respects the syntactic construction of the statute and gives some meaning to the Congressional usage of punctuation.
 
 
 28
 Third, by attaching greater significance to legislative margination than to punctuation or syntax, § 608(f) may be read as qualifying the legislative determination to make foster care benefits available to needy dependent children. In that case, the provisions of the foster care program embodied in subsections (a) to (d) are effective only under certain conditions. The "but only" clause of the section which immediately precedes subsections (e) and (f) thus encompasses all of the preceding statutory material. Assuming but without deciding that such is the case, subsection (f) still cannot be tortured into meaning that a state is required to remove children from the care of approved related persons. The very terms of the subsection merely provide that the agency plan for children assure that services are provided which are designed to improve the conditions of the home from which they were removed or to otherwise make it possible to place them in the home of a specified relative. See note 1 supra. A plan for any child which promoted the former objective would suffice. Thus, as the DCFS has earlier conceded, there is nothing in the language of § 608(f) which prevents payment of foster care benefits to related foster parents.
 
 
 29
 Moreover, were this court to attach greater significance to margination than to punctuation, it would inexorably be drawn back again to the defining passage. That portion of the statutory section is marginated in such a fashion as to place it on an equal footing with the effectuating clause and the "but only" qualification. Because the defining passage controls the entire section, not merely discrete subsections thereof, its plain language must control.
 
 
 30
 We conclude that neither the DCFS reliance on the ordinary meaning of the word "foster" nor its interpretation of the planning requirements embodied in § 608(f) can justify deviation from the statutory definition of a "foster family home." Thus we rule that the district court's grant of summary judgment on July 27, 1976 in favor of the Youakims was legally correct.
 
 II
 
 31
 The DCFS submits that this court should reverse the judgment order of August 24, 1976, even if it concludes that the summary judgment order was proper. The DCFS contends that the implementing order is overly broad, misleading, and contrary to the Social Security Act itself. In particular, the DCFS notes that the lower court ignored the § 608(a)(4) requirement that the foster child must either have been receiving AFDC or have been eligible to receive AFDC assistance had application been made within six months prior to the initiation of court action leading to a determination of wardship. See note 1 supra. The Youakims concede the possibility of ambiguity in the judgment order, but indicate that the foster children have no objection to an amendment to the order which would include reference to the 42 U.S.C. § 608(a)(4) requirement of an AFDC eligible home.
 
 
 32
 We agree that the judgment order, if read in its entirety, correctly and properly indicates the required scope of relief. However, in order to remove any possible misinterpretation that the § 608(a)(4) requirement need not be met in order to qualify for AFDC-FC benefits, we modify Paragraph 2 of the August 24, 1976, order.[10]
 
 
 33
 The DCFS further argues that the portion of the judgment order requiring it to promulgate new rules and regulations consistent with the court's order is an unwarranted intrusion into the internal affairs of the state and beyond the jurisdiction of the court.
 
 
 34
 We are satisfied that the district court had equitable power to order the promulgation of new rules and regulations. Although this case differs somewhat from Mandley v. Trainor, 545 F.2d 1062 (7th Cir. 1976) (Mandley II ), cert. granted sub nom. Quern v. Mandley, 431 U.S. 953, 97 S.Ct. 2672, 53 L.Ed.2d 269 (1977), the dissimilarity is not sufficient to require modification of the district court's order.
 
 
 35
 In Mandley II, supra at 1072, we recognized that the Secretary of HEW had a mandatory duty under 42 U.S.C. § 1302 to promulgate regulations implementing the provisions of the Social Security Act. In that case, we did decline to "order HEW specifically to include any items in its new regulation." Id. at 1073. Nonetheless, we rejected the notion implicit in HEW's objection that ordering the promulgation of regulations was an untoward invasion of the province of the Secretary. Id. at 1072. Here also, the DCFS is mandated by state law to establish rules and regulations concerning its operations of programs for foster care. See Ill.Rev.Stat.1975, ch. 23, § 5005.[11] Moreover, the district court's order in this case, by its very terms, does not direct the DCFS to adopt any particular rule or regulation. Instead, Paragraph 7 of the order carefully uses such words as "policies and procedures." It requires modification of existing provisions only insofar as
 
 
 36
 existing policies and procedures presently exclude from eligibility or deny full AFDC-F(C) foster care payments and ancillary benefits to otherwise eligible foster children and foster parents related to them, because such foster children are living in foster homes maintained by such foster parents, and/or which are otherwise inconsistent with or frustrate the statutory policy of Title IV of the Social Security Act, 42 U.S.C. § 601 et seq., favoring placement of such foster children in the homes of relatives.
 
 
 37
 Thus, there is no requirement that specific items be included in a promulgated regulation. The only proper reading of the judgment order is that it requires the DCFS to formulate its regulations consistent with the demands of federal statutory law. Acceptance of the DCFS argument would strip the federal courts of jurisdiction and power to enforce rights under 42 U.S.C. § 1983. The DCFS reliance on Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), is misplaced. Although the federal courts must be constantly mindful of the adjustment to be preserved between federal equitable power and state administration of its own law, they must, and do, retain power to enforce compliance with federal statutes.
 
 
 38
 For the reasons hereinbefore stated, the orders appealed from are affirmed as modified.
 
 
 39
 AFFIRMED.
 
 APPENDIX
 
 
 UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS
 EASTERN DIVISION
 
 
 No. 73 C 635
 
 40
 MARCEL YOUAKIM and LINDA YOUAKIM individually and as foster parents, TIMOTHY ROBERTSON, a minor, by his sister and next friend LINDA YOUAKIM, MARY LOU ROBERTSON, a minor, by her sister and next friend LINDA YOUAKIM, LARRY ROBERTSON, a minor, by his sister and next friend LINDA YOUAKIM, and SHERRY ROBERTSON, a minor, by her sister and next friend LINDA YOUAKIM, and all others similarly situated,
 
 
 41
 Plaintiffs,
 
 
 42
 v.
 
 
 43
 JEROME MILLER individually and as Director of the DEPARTMENT OF CHILDREN AND FAMILY SERVICES, and the DEPARTMENT OF CHILDREN AND FAMILY SERVICES of the STATE OF ILLINOIS,
 
 
 44
 Defendants.
 
 
 
 MEMORANDUM OPINION AND ORDER
 This matter comes before the Court on remand from the United States Supreme Court for consideration of plaintiffs' claim that the statutory scheme of the Illinois foster care program, specifically Illinois Revised Statutes ch. 23, §§ 2212.05, 2212.17 and 5005, is in conflict with Title IV of the Social Security Act, 42 U.S.C. §§ 601 et seq.
 This suit was commenced as a class action to enjoin the operation of the Illinois foster care payment scheme. Because the plaintiffs sought to enjoin the operation of a scheme established by state statute, a three-judge court was convened pursuant to 28 U.S.C. §§ 2281, 2284. Under the Illinois scheme foster parents who provide homes for unrelated children receive monthly foster care payments (AFDC-FC) of $105.00 per child from the Department of Children and Family Services, while foster parents who provide homes for related children do not receive such payments. Related foster parents, instead, are eligible for smaller AFDC payments from the Illinois Department of Public Aid.
 The three-judge court granted summary judgment in favor of defendants, finding that the Illinois scheme "does not deny plaintiffs the equal protection of the laws." 374 F.Supp. 1204, 1210 (N.D.Ill.1974). The Supreme Court, in vacating the three-judge court judgment and remanding, noted that "the circumstances justify . . . our dealing with the issue of conflict between state and federal statute at least to the extent of vacating the judgment below and remanding the case for consideration of the claim that the Illinois foster care program is in conflict with the Social Security Act." Youakim v. Miller, 425 U.S. 231, 96 S.Ct. 1399, 1401 (1976).
 STATEMENT OF FACTS
 Plaintiffs are Marcel and Linda Youakim, husband and wife, and Linda's four minor brothers and sisters. All four minors were adjudged wards of the State in 1969. Two of the children have been living with their related foster parents, the Youakims since 1972; the other two children have been living in two separate unrelated foster care facilities since 1969. Because plaintiff Linda Youakim is related to her two foster children, the Youakims are ineligible for foster care payments (AFDC-FC under the Illinois Child Care Act. Illinois Revised Statutes ch. 23, 2212.17.[1] The Youakims did apply for and are receiving the smaller AFDC payments for both children. Illinois Revised Statutes ch. 23, §§ 4-1 et seq.[2]
 Plaintiffs allege injury resulting in the financial inability to provide adequate care for their foster children and to bring the remaining two children into their foster home. Plaintiffs argue that the Illinois scheme violates the Supremacy Clause of the United States Constitution. The Youakims also contend that the Illinois scheme denies related foster families equal protection of the laws by discriminating against wards of the State and their relatives who are financially unable to provide foster homes for the wards without full foster care payments.
 On remand from the Supreme Court, plaintiffs ask this Court to enjoin enforcement of the State statutes involved pursuant to Rule 65(a), Federal Rules of Civil Procedure, or in the alternative, to grant summary judgment against defendants pursuant to Rule 56, Federal Rules of Civil Procedure. Defendants ask that this Court deny plaintiffs' motion for a preliminary injunction and grant summary judgment in their favor.
 THE PARTIES' ARGUMENTS
 Plaintiffs contend that Illinois attempts to add an additional eligibility requirement to the federal scheme regulating AFDC-FC foster care payments. In support of their position, plaintiffs note that in the Social Security Act (the "Act"), Section 601 (Section 401 of the Social Security Act) evidences a clear national policy favoring placement of dependent children in their own homes or the homes of certain close relatives,[3] while Section 608 (408) provides that federal funds are to be paid for the foster care of dependent children in the home of any individual. Section 608 (408) defines the foster family home of any individual as:
 (A) foster family home for children which is licensed by the state in which it is situated or has been approved, by the agency of such state responsible for licensing homes of this type as meeting the standards established for such licensing . . . .
 Plaintiffs allege that in contrast to the federal scheme, the Illinois scheme requiring that foster parents be unrelated pulls families apart by prohibiting receipt of AFDC-FC payments by related foster parents. Section 5 of the Department of Children and Family Services Act, Illinois Revised Statutes ch. 23, § 5005, empowers the Department and its Director to establish rules and regulations concerning foster care, while the other challenged sections provide in pertinent part:
 "Facility for child care" or "child care facility" means any person . . . who or which receives or arranges for care or placement of one or more children unrelated to the operator of the facility. Illinois Revised Statutes ch. 23, §§ 2212.05, 2212.17. (emphasis added)
 The plaintiffs note further that while Illinois Revised Statutes ch. 23, § 4-1.2 provides for foster care payment, the Illinois Department of Children and Family Services Placement Manual states that "(t)he Department has no statutory authority to pay relatives for the care of children." Manual at 97.
 Defendants argue, conversely, that the Illinois foster care program parallels the federal scheme since parents and close relatives are treated separately from foster parents. Defendants note that Sections 601-606 (401-406) of the Act provide for aid to needy children living with their parents or certain close relatives (AFDC), while Section 608 (408) provides aid to children removed by court order from the homes of parents or close relatives and placed in foster care facilities (AFDC-FC). They argue Illinois, likewise, provides aid for children living with their parents or close relatives under the AFDC program. Illinois Revised Statutes ch. 23, §§ 4-1 to 4-11, and aid to children living with unrelated foster parents under the AFDC-FC program, Illinois Revised Statutes, ch. 23, § 4-1.2. Defendants note that Section 603(a)(1)(B) (403(a)(1)(B)) of the Act, as construed by the court in Ramos v. Montgomery, 313 F.Supp. 1179 (S.D.Cal.1970), aff'd, 400 U.S. 1003 (1971), authorizes higher payments to recipients of AFDC-FC benefits than to AFDC recipients. Finally, defendants argue that the two categories, parents and relatives of needy children and foster parents, are mutually exclusive under a correct interpretation of the Department of Health, Education and Welfare ("HEW") regulations contained in 45 C.F.R. § 233.90 (1975).CONCLUSIONS
 The Constitution and the laws of the United States are the supreme law of the land. McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316 (1819). Because of the Supremacy Clause of the United States Constitution, Article VI, Clause 2, states may not enact laws or regulations which are contrary to federal law. If the challenged Illinois statutes are in conflict with Article IV of the Social Security Act, such statutes are invalid under the Supremacy Clause. King v. Smith, 392 U.S. 309 (1968); Lewis v. Martin, 397 U.S. 552 (1970); Townsend v. Swank, 404 U.S. 282 (1971); Carleson v. Remillard, 406 U.S. 598 (1972); Van Lare v. Hurley, 421 U.S. 338 (1975); and Philbrook v. Glodgett, 421 U.S. 707 (1975).
 As the basic question is one of statutory construction, this Court looks to three sources to determine whether the Illinois scheme violates the provisions of Title IV of the Act: (1) the plain words and meaning of the Act; (2) the interpretation and advice of the administering agency, HEW; and (3) the legislative history and the overall purpose of the Act.
 
 
 [1]
 PLAIN MEANING OF THE SOCIAL SECURITY ACT
 Plaintiffs argue that the plain meaning of the Act is that all wards of the state placed in approved foster homes are eligible for full AFDC-FC payments under Section 608 (408). In contrast, defendants contend that the plain meaning of the Act indicates that Congress intended to provide assistance to needy children living with close relatives through the AFDC program under Section 606 (406) of the Act rather than through the Section 608 (408) foster care program. This Court agrees with plaintiffs(') contention.
 The four minor plaintiffs were removed from their own home and declared wards of the State in 1969. While all four lived in unrelated foster care facilities, those facilities received the full $105.00 per child per month AFDC-FC allotment. In order to effectuate the policy that wards of the State be placed in the best home possible, two of the four children were moved to a related home in 1972 and AFDC-FC payments on behalf of those children were terminated.
 Plaintiffs Youakims' home has been approved as a foster care home by the State as required by Section 608 (408) of the Act.[4] The Youakims were required to sign the same Illinois Foster Home Placement Agreement[5] and incurred identical obligations as all other foster parents in Illinois.
 This Court finds, therefore, that under the plain words and meaning of Section 608 (408) of the Act, the four minor plaintiffs meet all the requirements for eligibility and the Youakims are an approved foster home.
 
 
 [2]
 ADVICE OF THE ADMINISTERING AGENCY
 The Supreme Court, in remanding this case, noted that "(t)he interpretation of a statute by an agency charged with its enforcement is a substantial factor to be considered in construing the statute." (citations omitted) The plaintiffs note that the Solicitor General of the United States, arguing on behalf of HEW in an amicus memorandum filed with the Supreme Court, submitted:
 (T)hat the Illinois policy of denying foster care AFDC (AFDC-FC) benefits for children living with relatives is invalid because it conflicts with specific criteria for eligibility set forth in the Social Security Act . . . .
 Those conditions were satisfied here, and the (children are) therefore entitled to foster care benefits. (Amicus Memorandum at 2, 5)Plaintiffs further submit that HEW has issued a "Program Instruction"[6] to all state welfare agencies which requires full AFDC-FC payments to children living in approved related foster homes.
 Defendants urge this Court to reject these new HEW guidelines as inconsistent with the federal statute. However, this Court finds the guidelines to be consistent with the plain words and meaning of Section 608 (408) of the Act.
 This Court believes these guidelines are persuasive authority in support of plaintiffs' position.
 
 
 [3]
 LEGISLATIVE HISTORY OF THE SOCIAL SECURITY ACT
 The legislative history of Title IV of the Act indicates that its overall purpose is to insure the best possible care for all dependent children. Originally Title IV only covered needy children living with parents or designated relatives, and Title V covered foster children. In 1961 aid to foster children was brought under Title IV when Congress created AFDC-FC assistance. In authorizing the new foster care program, Congress noted that states would have the option of dispersing federal funds to children who had been adjudicated wards of the state and who were in need of foster homes.[7]
 Plaintiffs contend that the complete legislative history of the Act supports the position that Congress intended every eligible child placed in an approved foster home to receive AFDC-FC benefits. Defendants respond that the legislative history shows Congress intended a continuing distinction between foster care and related care despite the fact that both programs were brought under one title in 1961.
 After studying the relevant legislative history this Court believes Congress did not intend to exclude related foster homes from AFDC-FC benefits authorized in Section 608 (408) of the Act. Rather, Congress intended such benefits to be paid to eligible children in all approved foster homes.
 This Court concludes therefore that Title IV of the Social Security Act authorizes AFDC-FC payments to all eligible children living in state-approved foster homes. The only requirements set forth in Section 608 of the Act are that such children be: (1) adjudicated wards of the state; (2) removed from their own homes; and (3) in need of assistance. Illinois, by refusing AFDC-FC payments to all related foster parents, attempts to add a further requirement of eligibility for such payments. The Illinois scheme, Illinois Revised Statutes ch. 23, §§ 2212.05, 2212.17 and 5005, insofar as it denies eligibility to foster parents providing homes for children related to them, violates Title IV of the Social Security Act, §§ 601, 608 (§§ 401, 408) and the Supremacy Clause of the United States Constitution, Article VI, Clause 2. The challenged statutes therefore must fall. King v. Smith, supra; Townsend v. Swank, supra; Carleson v. Remillard, supra; Van Lare v. Hurley, supra; and Philbrook v. Goldgett, supra.
 Accordingly, plaintiffs' motion for summary judgment is granted. Since plaintiffs have prevailed on the statutory issue, it is unnecessary for this Court to reach the equal protection issue.
 ENTER:
 /s/ ALFRED Y. KIRKLAND, Judge
 DATED: July 27, 1976.
 
 
 *
 Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation
 
 
 [1]
 42 U.S.C. § 608 (1970 ed. and Supp. V, 1975), provides: Effective for the period beginning May 1, 1961
 (a) the term "dependent child" shall, notwithstanding section 606(a) of this title, also include a child (1) who would meet the requirements of such section 606(a) or of section 607 of this title except for his removal after April 30, 1961, from the home of a relative (specified in such section 606(a)) as a result of a judicial determination to the effect that continuation therein would be contrary to the welfare of such child, (2) whose placement and care are the responsibility of (A) the State or local agency administering the State plan approved under section 602 of this title, or (B) any other public agency with whom the State agency administering or supervising the administration of such State plan has made an agreement which is still in effect and which includes provision for assuring development of a plan, satisfactory to such State agency, for such child as provided in paragraph (f)(1) and such other provisions as may be necessary to assure accomplishment of the objectives of the State plan approved under section 602 of this title, (3) who has been placed in a foster family home or child-care institution as a result of such determination, and (4) who (A) received aid under such State plan in or for the month in which court proceedings leading to such determination were initiated, or (B)(i) would have received such aid in or for such month if application had been made therefor, or (ii) in the case of a child who had been living with a relative specified in section 606(a) of this title within 6 months prior to the month in which such proceedings were initiated, would have received such aid in or for such month if in such month he had been living with (and removed from the home of) such a relative and application had been made therefor;
 (b) the term "aid to families with dependent children" shall, notwithstanding section 606(b) of this title, include also foster care in behalf of a child described in paragraph (a) of this section
 (1) in the foster family home of any individual, whether the payment therefor is made to such individual or to a public or nonprofit private child-placement or child-care agency, or
 (2) in a child-care institution, whether the payment therefor is made to such institution or to a public or nonprofit private child-placement or child-care agency, but subject to limitations prescribed by the Secretary with a view to including as "aid to families with dependent children" in the case of such foster care in such institutions only those items which are included in such term in the case of foster care in the foster family home of an individual.
 (c) the number of individuals counted under clause (A) of section 603(a)(1) of this title for any month shall include individuals (not otherwise included under such clause) with respect to whom expenditures were made in such month as aid to families with dependent children in the form of foster care; and
 (d) services described in paragraph (f)(2) of this section shall be considered as part of the administration of the State plan for purposes of section 603(a)(3) of this title;
 but only with respect to a State whose State plan approved under section 602 of this title
 (e) includes aid for any child described in paragraph (a) of this section, and
 (f) includes provision for (1) development of a plan for each such child (including periodic review of the necessity for the child's being in a foster family home or child-care institution) to assure that he receives proper care and that services are provided which are designed to improve the conditions in the home from which he was removed or to otherwise make possible his being placed in the home of a relative specified in section 606(a) of this title, and (2) use by the State or local agency administering the State plan, to the maximum extent practicable, in placing such a child in a foster family home or child-care institution of the services of employees, of the State public-welfare agency referred to in section 722(a) of this title (relating to allotments to States for child welfare services under sections 721 to 726 of this title) or of any local agency participating in the administration of the plan referred to in such section, who perform functions in the administration of such plan.
 For purposes of this section, the term "foster family home" means a foster family home for children which is licensed by the State in which it is situated or has been approved, by the agency of such State responsible for licensing homes of this type, as meeting the standards established for such licensing; and the term "child-care institution" means a nonprofit private child-care institution which is licensed by the State in which it is situated or has been approved, by the agency of such State responsible for licensing or approval of institutions of this type, as meeting the standards established for such licensing.
 
 
 [2]
 We also note the district court's references to Sections 601, 603, 606, and 608 of the Social Security Act must be read as referring to the appropriate section numbers of Title 42, United States Code, and not to the Sections of the Act as adopted
 
 
 [3]
 As is the case not infrequently in the English language ambiguities easily emerge. Thus, it might be argued that when persons are designated by a court order to rear a child of someone else, they could not be foster parents because they are related by legal ties. We will assume, however, for the purposes of consideration of the definition quoted above that "related" might narrow the construction to adoptive non-blood parents
 
 
 [4]
 At oral argument, the DCFS stated that "(i)t's very true that under the (federal) foster care program the relatives' home is not excluded from coverage under this program It's not literally excluded." On January 25, 1974, during oral argument before the three-judge court, the DCFS similarly admitted that "(t)here is nothing in Federal or State statutes which bars payment to foster parents of related children, that plaintiffs have repeatedly stressed." Of course, these concessions were made in the light of the DCFS reading of an implied legislative intent to bar payments under the 42 U.S.C. § 608 program to individuals qualifying under 42 U.S.C. § 606
 
 
 [5]
 Thus, the DCFS argues that "(t)he conclusion of the district court that the Youakims are foster parents essentially evolve(s) from the court's erroneous findings that the Youakim home 'has been approved as a foster care home by the State . . . .' " In pressing still further this contention, the DCFS insists that:
 By statute, the State of Illinois licenses foster family homes and child-care institutions, in contrast to the equivalent "approval" procedure designated in § 608 which is followed in states which do not license foster care homes. (See Ill.Rev.Stat., 1971, Ch. 23, § 2214.) The Youakim home was not licensed by the State of Illinois, and obviously it could not have been "approved" as a foster care home. While it is true that because all children declared to be state wards are the legal responsibility of the state, the Youakim home was initially inspected by state officials to determine that such home was suitable for the placement of the related children, at no time was the home officially designated as a foster care facility within the meaning of § 608. Hence, the district court's statement that the Youakim home "has been approved as a foster care home" is erroneous. (Emphasis supplied.)
 
 
 [6]
 At oral argument before the three-judge court, the DCFS explained that relatives were not subject to the licensing requirement. "(T)he State in its wisdom regards foster care on the part of relatives to be of a much more personal nature (than is the case with persons unrelated to the children for whom they provide foster parent care), and in its desire to secure family unity excludes relatives from the requirements of obtaining a license before placement is made with them."
 
 
 [7]
 As the text of the executed agreement itself makes clear, the DCFS attempt to strike out "foster" in all instances was not successfully executed. Because the DCFS approved the home for the care of a foster child, it ill serves their case to argue now that the Youakims have persistently begged the essential question in this appeal by insisting that they are foster parents
 
 
 [8]
 42 U.S.C. § 603(a)(1)(A) (1970 ed. and Supp. V, 1975), provides:
 (a) From the sums appropriated therefor, the Secretary of the Treasury shall pay to each State which has an approved plan for aid and services to needy families with children, for each quarter, beginning with the quarter commencing October 1, 1958
 (1) in the case of any State other than Puerto Rico, the Virgin Islands, and Guam, an amount equal to the sum of the following proportions of the total amounts expended during such quarter as aid to families with dependent children under the State plan (including expenditures for premiums under part B of subchapter XVIII of this chapter for individuals who are recipients of money payments under such plan and other insurance premiums for medical or any other type of remedial care or the cost thereof)
 (A) five-sixths of such expenditures, not counting so much of any expenditure with respect to any month as exceeds the product of $18 multiplied by the total number of recipients of aid to families with dependent children for such month (which total number, for purposes of this subsection, means (i) the number of individuals with respect to whom such aid in the form of money payments is paid for such month, plus (ii) the number of other individuals with respect to whom expenditures were made in such month as aid to families with dependent children in the form of medical or any other type of remedial care, plus (iii) the number of individuals, not counted under clause (i) or (ii), with respect to whom payments described in section 606(b)(2) of this title are made in such month and included as expenditures for purposes of this paragraph or paragraph (2)); plus . . ..
 
 
 [9]
 42 U.S.C. § 603(a)(3) (1970 ed. and Supp. V, 1975), in pertinent part, provides:
 (a) From the sums appropriated therefor, the Secretary of the Treasury shall pay to each State which has an approved plan for aid and services to needy families with children, for each quarter, beginning with the quarter commencing October 1, 1958
 (3) in the case of any State, an amount equal to the sum of the following proportions of the total amounts expended during such quarter as found necessary by the Secretary of Health, Education, and Welfare for the proper and efficient administration of the State plan
 
 
 [10]
 The paragraph as modified will thus read:
 
 
 [2]
 42 U.S.C. §§ 601 and 608 require that whenever a child has been or is removed from the home of a relative specified in 42 U.S.C. § 606(a) as the result of a judicial determination to the effect that continuation therein would be contrary to the welfare of such child and his placement and care are the responsibility of defendants, and such child is placed by defendants in an approved foster home maintained by relatives of the child, and such child received aid under the State plan approved under section 602 of Title 42 in or for the month in which court proceedings leading to such determination were initiated or would have received such aid in or for such month if application had been made therefor or, in the case of a child who had been living with a relative specified in § 606(a) within six months prior to the month in which such proceedings were initiated would have received such aid in or for such month if in such month he had been living with (and removed from the home of) such a relative and application had been made therefor, such child and those relatives shall be eligible for full AFDC-FC payments and ancillary benefits to the same extent as a child placed in a foster home maintained by foster parents not related to the child, and such parents
 
 
 [11]
 The DCFS contends that, under Ill.Rev.Stat.1975, ch. 23, § 5004, the Department has been given discretionary authority to promulgate rules and regulations consistent with law. We regard as disingenuous the DCFS omission of the plain language in § 5005 which mandates the establishment of rules and regulations
 
 
 [1]
 This section provides in pertinent part: " 'Foster family home' means a facility for child care in residences of families who receive no more than (eight) children unrelated to them . . . for the purpose of providing family care and training for the children on a full-time basis." (emphasis added)
 
 
 [2]
 Although foster parents caring for related children are eligible for Aid to Families with Dependent Children ("AFDC") payments under the statute, they must make a separate application to the Department of Public Aid for the average $63.00 per month per child
 
 
 [3]
 Linda Youakim, as sister of the minor plaintiffs, is such a close relative under § 606(a)(1) (§ 406(a)(1)) of the Act
 
 
 [4]
 Illinois licenses unrelated foster homes and approves homes of related individuals taking in wards of the State. Approved homes, however, must meet the same high standards as licensed homes and must submit to regular inspections and reports by employees of the Department of Children and Family Services
 
 
 [5]
 In the Youakims' Agreement however, the word foster and the sections providing for AFDC-FC payments were deleted
 
 
 [6]
 Program Instruction APA-PI-75-9 was issued on October 25, 1974. The Supreme Court considered the issuance of this directive as one reason for vacating the lower court's judgment and remanding this case
 
 
 [7]
 See Sen. Rep. No. 165, 87th Cong. 1st Sess., 1961 U.S. Cong. & Adm. News V.2 at 1717